UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KELLIE CHAPMAN, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**AA ACTION COLLECTION CO., INC. doing business as AA ACTION COLLECTION COMPANY, CHULSKY KAPLAN, LLC, AND JOHN DOES 1-25,**<br><br>**Defendants.** | Civ. No. 2:21-cv-04175 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

In this is putative class action for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.,* ("FDCPA"), the Court denied without prejudice the motion of Defendant AA Action Collection Co., Inc., D/B/A AA Action Collection Company's ("AA" or "Defendant") for Fed. R. Civ. P. 56 summary judgment, ECF No. 25, and the cross motion for summary judgment by Plaintiff Kellie Chapman's ("Plaintiff"), ECF No. 33, pending the Court's determination of whether it has subject matter jurisdiction. ECF No. 45. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the Complaint is **dismissed** for lack of standing.

I. **BACKGROUND[1] AND PROCEDURAL HISTORY**

Sometime prior to October 22, 2020, Plaintiff incurred one or more financial obligations arising out of a transaction with Livingston Subspecialty Group, LLC ("LSG"), a New Jersey healthcare provider. Pl.'s Statement of Material Facts Not in Dispute ("PSUMF") at ¶¶ 4, 9, ECF. 33-2. After the obligations became past due, LSG sent AA the Debt for collection. *Id.* at ¶¶ 5-7; Todd Bank Certification in Support of Defs.' Mot. to Dismiss ("Bank Cert.")[2] at ¶¶ 2-3, ECF No. 25-1. On September 26, 2018, AA sent a debt collection letter to Plaintiff indicating, among other things, that if she did not dispute the $300 outstanding balance ("Debt") within 30 days, her account may be reported to credit

---

[1] The facts are taken from allegations in the Complaint and the Parties' submissions in support of their respective summary judgment motions.

[2] Although Defendant's motion was one for summary judgment, the Bank Cert. is captioned as a "Certification in support of Defendant's Motion to Dismiss and Sanctions."

reporting agencies. *See* Bank Cert., Sch. A, ECF No. 25-2. On October 30, 2018, AA sent Plaintiff a second debt collection letter informing her that that would be the last and final written notice regarding the Debt before her account would be scheduled to be reported to the credit reporting agencies. *Id.* at Sch. C. Thereafter, on or about November 30, 2018, AA reported the unpaid Debt to TransUnion. PSUMF at ¶ 22; Bank Cert. at ¶ 9.

Nearly two years later, because Plaintiff did not recognize the creditor LSG on her credit reports, Plaintiff faxed a letter dated October 22, 2020 to AA disputing the Debt and requesting verification and proof of the balance owed ("Dispute Letter"). *See* Compl., Ex. A, ECF No. 1-2; PSUMF at ¶¶ 17-21; Cert. of Kellie Chapman ("Chapman Cert.") at ¶¶ 4-6, ECF No. 33-4. Proof of a 42 second fax transmission on October 20, 2020 is attached to the Cert. of Joseph K. Jones, Esq. ("Jones Cert."), Ex. 2 at CHAP16, ECF 33-5. AA denies that it received the Dispute Letter or that Plaintiff ever responded in any capacity to the debt collection letters. Bank Cert. at ¶ 10. On December 24, 2020, Plaintiff reviewed her TransUnion credit report, which does not indicate that the Debt is disputed but does state: "Date Updated: 12/18/2020." PSUMF at ¶¶ 23-26, Ex. 2 at CHAP16, ECF No. 33-5.

On March 5, 2021, Plaintiff filed a putative class action claiming violations of §§ 1692e(2)(A), 1692e(8), and 1692e(10) of the FDCPA.[3] Plaintiff maintains that by failing to communicate to one or more of the credit reporting bureaus that the Debt was disputed, AA falsely or deceptively represented or made a misleading representation as to the character or legal status of her Debt in violation of the FDCPA.

Subsequently, Defendant filed a motion for summary judgment arguing that Plaintiff's claims are time-barred. Plaintiff cross moved for summary judgment. The Court denied those motions without prejudice stating it would re-list the motions if it found subject matter jurisdiction to exist. After giving the parties the opportunity to address whether Plaintiff was concretely harmed and had Article III standing to bring her claims, *see* Order dated October 5, 2022, ECF No. 41; *see also* Fed. R. Civ. P. 56(f); *Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 (3d Cir. 2018), the Court now addresses the standing issue.

---

[3] 15 U.S.C.A. § 1692e provides in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. . . . [T]he following conduct is a violation of this section: . . . (2) The false representation of – (A) the character, amount, or legal status of any debt; or . . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, *including the failure to communicate that a disputed debt is disputed.* . . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(emphasis added).

2

## II. DISCUSSION

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Art. III § 2. The burden of establishing jurisdiction rests with the party invoking federal court jurisdiction. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016); *Animal Sci. Prod., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 470 (3d Cir. 2011). Plaintiffs must "clearly ... allege facts demonstrating" all three elements of constitutional standing: (1) an "injury in fact," (2) that is "fairly traceable" to a defendant's conduct, and that (3) is likely to be redressed by favorable judicial intervention. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). To establish an "injury in fact," a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations omitted). Concrete injuries can be tangible or intangible. *See TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2204 (2021).

In determining whether "an intangible harm constitutes injury in fact," the first inquiry is "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 340. For instance, various intangible injuries such as "reputational harms, disclosure of private information, and intrusion upon seclusion," can be concrete. *TransUnion*, 141 S. Ct. at 2204. Another consideration in determining whether harm is sufficiently concrete is the decision of Congress to elevate "'to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 578 U.S. at 341 (citing *Lujan*, 504 U.S. at 578). However, even in the context of a statutory violation, Article III standing requires a concrete injury. *Id.* at 341.

Here, the reputational harm that Plaintiff is claiming she suffered is analogous to the harm caused by defamation. *See Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1153 (7th Cir. 2022) ("the harm Congress sought to remedy through § 1692e(8) is analogous to the harm caused by defamation, which has long common law roots."). "A statement is defamatory when it 'is false and injurious to the reputation of another' or exposes another person to 'hatred, contempt or ridicule' or subjects another person to 'a loss of the good will and confidence' in which he or she is held by others." *Feggans v. Billington*, 291 N.J. Super. 382, 390 (App. Div. 1996) (citing *Romaine v. Kallinger*, 109 N.J. 282, 289 (1988)). Plaintiff must "'plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication'" to a third party. *D'Agostino v. Musical Heritage Soc.*, 2015 WL 5090862, at *11 (N.J. Super. Ct. App. Div. Aug. 20, 2015) (citing *Darakjian v. Hanna*, 366 N.J. Super. 238, 249 (App. Div. 2004)).

In *TransUnion*, 141 S. Ct. at 2209, class members were mislabeled as "potential terrorists or serious criminals," but the Court held that only those members whose credit reports were actually disseminated to third-parties suffered concrete harm that bore a "close relationship to the harm from a false and defamatory statement." Because "[p]ublication is 'essential to liability' in a suit for defamation," those members whose credit files were kept

3

internally and not disclosed to third-parties were found to lack concrete harm. *Id.* at 2209, 2212. Notably, the fact of publication was not in dispute because the parties had stipulated that only certain class members had credit reports disseminated by TransUnion to potential creditors. *Id.* at 2200, 2190. Similarly, in *Ewing*, where the plaintiffs alleged that the defendant debt collectors had failed to report to credit reporting agencies that the plaintiffs' debts were disputed, the Seventh Circuit determined that the plaintiffs had suffered sufficient reputational harm because they had demonstrated that the misleading information had been disseminated to credit reporting agencies. *Ewing*, 24 F.4th at 1154. The plaintiffs even submitted evidence that their credit score rose once the debts were recorded as disputed. *Id.* at 1149-50.

In contrast to *TransUnion* and *Ewing* where dissemination was evident as to those plaintiffs found to have standing, here, Plaintiff has not set forth any facts to show that there was in fact publication of a defamatory statement. Since Plaintiff does not claim she notified AA of her dispute of the Debt until October 22, 2020, any failure to report the Debt as disputed must have occurred after that date. Plaintiff's conclusion that AA reported the Debt to TransUnion on December 18, 2020 is based solely on the credit report's reference to "Date Updated." However, Plaintiff has proffered *no* evidence as to the source of that "update" or the reason for any "update" when no change in information is evident on the credit report. Even if the "update" was from AA, it is conjecture as to when the "update" was sent; there is nothing in the record that explains how TransUnion handles communications from debt collectors or agencies. In short, Plaintiff has not presented sufficient evidence to demonstrate that sometime between October 22, 2020 and December 18, 2020, AA disseminated to TransUnion *any* information regarding the Debt.[4] Even assuming *arguendo* that AA did send the "update," there is no evidence of what information any such communication contained, namely that it failed to indicate that the Debt was disputed and hence defamatory. While Plaintiff claims she suffered "damages and other harm," *see e.g.,* Compl., ¶ 56, she fails to demonstrate publication of misleading information which is required for reputational harm.

---

[4] Plaintiff does not appear to claim that AA caused reputational harm by *omitting* to send TransUnion a report of the Debt dispute. To the extent she does, the common law analog of defamation also requires fault. *Zheng v. Quest Diagnostics*, 248 Fed. Appx. 416, 418 (2007); *Feggans v. Billington*, 291 N.J. Super. 382, 390-91 (1996). Fault in "private defamation is proven by a negligence standard." *D'Agostino v. Musical Heritage Soc.*, 2015 WL 5090862, at *11 (N.J. Super. Ct. App. Div. Aug. 20, 2015) (citation omitted). Based on the facts as pled by Plaintiff, after AA first reported the Debt to TransUnion in 2018, AA had no affirmative duty to report that Plaintiff subsequently disputed her debt and therefore, AA was not negligent in failing to do so. *See Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008) (adopting FTC Commentary that states: "When a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported."); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1189 (10th Cir. 2013) (agreeing with *Wilhelm's* interpretation of § 1692e(8) that "debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report" it); *see also Foster v. E Partner Net*, No. 16-6118, 2017 WL 1375177, at *3 (D.N.J. Apr. 11, 2017) ("plaintiff has a cause of action under the FDCPA only if he notified the debt collector that the debt was disputed *before* the debt collector reported the debt to the credit reporting agency." (emphasis in original)).

4

Moreover, insofar as Plaintiff appears to contend in her briefs that risk of *future* harm is the concrete injury, that has not been pled in the Complaint nor has Plaintiff set forth facts to support such a claim. In any event, the mere "risk of future harm" alone does not support Article III standing in a suit for damages. *TransUnion*, 141 S. Ct. at 2213.

Alternatively, Plaintiff argues that she has standing because she has alleged a statutory violation of the FDCPA involving misleading and deceptive statements as in *Ozturk v. Amsher Collection Servs.*, No. 21-18317, 2022 WL 1602192 (D.N.J. May 20, 2022) (finding standing to allege false and misleading debt collection letter) and *Velez-Aguilar v. Sequium Asset Sols., LLC*, No. 21-14046, 2022 U.S. Dist. LEXIS 8842 (D.N.J. Jan. 18, 2022) (same), *aff'd on other grounds*, 2023 U.S. App. LEXIS 2943 (3d Cir. Feb. 7, 2023). However, as discussed above, Plaintiff has not presented sufficient evidence to support a finding that after October 22, 2020, AA published *any* statement to TransUnion or any other third-party regarding Plaintiff's Debt, let alone a misleading one.

In sum, Plaintiff has failed to establish that she suffered a concrete injury to confer Article III standing.

### III. CONCLUSION

For the reasons noted above, the Complaint is **dismissed** for lack of standing.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

Date: February 15, 2023